UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

————————————————————
                                    )
ARTHUR MONIZ,                       )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   CIVIL ACTION NO. 09-10149-PBS
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of                     )
Social Security,                    )
                                    )
            Defendant.              )
————————————————————)

**MEMORANDUM AND ORDER**

September 16, 2010

Saris, U.S.D.J.

## I.  INTRODUCTION

Plaintiff Arthur Moniz, who suffers from degenerative disc disease, depression, and anxiety, challenges the final decision of the Commissioner denying him Social Security disability and disability insurance benefits.  After review of the record, the Court **DENIES** plaintiff's Motion to Reverse the Decision of the Social Security Administration, but **ALLOWS** the Motion for Remand because the ALJ failed to give adequate consideration to plaintiff's back pain.  The Defendant's Motion for an Order Affirming the Decision of the Commissioner is **DENIED**.

## II.  BACKGROUND

A.  <u>Employment and Medical History</u>

Plaintiff is fifty-one years old and has completed twelve years of school.  (Administrative Transcript ("Tr.") 54, 133.) He worked in shipping and receiving, and briefly as a truck driver, but has not engaged in any substantial gainful activity since December 15, 2003.  (Tr. 13, 25-26.)

1.  <u>Physical Ailments</u>

Plaintiff has had intermittent lower back pain since childhood, the result of a deformed lumbar vertebra.  (Tr. 24-25.)  X-rays taken in 1999 revealed mild degenerative changes and spondylolysis –– degeneration or deficient development of a vertebra –– at the L5 level.  (Tr. 222.)  Dr. Anne Marie Treadup, plaintiff's primary care physician, treated him between 2000 and 2006.  (Tr. 289-94, 308-12, 341.)  Her records contain few references to lumbar pain (<u>See, e.g.</u>, Tr. 308, 310), but do address plaintiff's depression and anxiety.  Dr. Treadup prescribed various pain relievers and muscle relaxants for his back over a period of several years, including Flexeril, Percocet, and Skelaxin, as well as Ibuprofin.  (Tr. 305, 308.) Her notes for April 16, 2002, and August 8, 2003, also suggest referring plaintiff to an orthopedist, but the record contains no evidence of his seeing one prior to 2006.  (Tr. 289.)

Plaintiff sought treatment from Dr. Jeffrey G. Swift, a
chiropractor, from 1994 to 2005, with no treatment between 1997
and 2001.  (Tr. 156, 223.)  In April 2001, Dr. Swift examined
plaintiff and his x-rays, diagnosing spondylolysis with mild
listhesis and lumbar pain originating from an intervertebral
disc.  (Tr. 222-23.)  At that time, plaintiff reported lower back
pain rated eight on a ten point scale, but was unsure if he had a
history of spondylolysis.  (Tr. 223.)  After several days of
treatment, Dr. Swift noted that plaintiff's condition was
improved, his prognosis was good, and that he could return to
work as of April 13, 2001.  (Tr. 224.)

Dr. Swift treated plaintiff again on January 21, 2004,
diagnosing annular insult –- a ring-shaped injury –- and
discogenic pain with antalgia.  (Tr. 228.)  At that time,
plaintiff characterized his pain as a seven out of ten, which he
had experienced over the past several days.  (Id.)  Dr. Swift
noted that plaintiff was "totally disabled from occupational
duties" on January 21, 2004 (Tr. 229, 231), but his treatment
notes over the next several weeks indicated that plaintiff
"[f]eels better," made "marked improvement," and had "no acute
pain".  (Tr. 232-34, 236-38.)  On March 23, 2004, he reported
that plaintiff was "able to return to his . . . occupational
duties with no restrictions . . . ."  (Tr. 239.)  Dr. Swift
treated plaintiff again between July 26, 2004, and September 2,

2004 (Tr. 241-52), and reported, once again, that he was "able to return to work on [September 19, 2004,] with no restrictions." (Tr. 240.)

On October 16, 2006, Dr. Swift completed a questionnaire in connection with plaintiff's application for disability benefits. (Tr. 253-54.)  He identified the underlying diagnosis as spondylolysis with no associated limitations to plaintiff's range of motion, motor, or sensory functions, and no current treatment. (Tr. 253.)  However, he did find that Mr. Moniz had low back pain and pain with back flexion.  (Id.)  On a separate questionnaire addressing pain arising from the spondylolysis, Dr. Swift indicated that plaintiff was limited only in "bend[ing] repetitively at the waist."  (Tr. 254.)

On August 11, 2006, plaintiff sought treatment from Dr. David E. Adelberg, an orthopedist.  He found that plaintiff's back had limited range of motion and exhibited spasm, list, and tenderness.  (Tr. 204.)  Although his records indicate that plaintiff was oriented, neurovascularly intact, suffering no acute distress, and walking with a normal gait, Dr. Adelberg's impression was of "a gentleman who is absolutely miserable." (Tr. 204-05.)  Mr. Moniz related four decades of back pain: "He essentially has had intermittent back problems where his back would 'go out' during which time he is either unable to stand or has to walk around in a crab like fashion, sometimes crawl on the

floor and it can take days or months to resolve." (Tr. 382.) He added, "The back is positive for spasm, list and tenderness with extremely painful limited range of motion." (Id.) Dr. Adelberg diagnosed symptomatic spondylolysis and recommended epidural steroid injections as "the next step up the treatment ladder . . . ." (Tr. 383)

Plaintiff ceased seeing his primary care physician, Dr. Treadup, when his health insurance terminated in February 2007 and thereafter saw Dr. Sheldon Davis of the St. Luke's Ambulatory Care Clinic. (Tr. 359; see also Tr. 27-28.) Dr. Davis's notes indicate that one of plaintiff's chief complaints was intermittent lower back pain, which varied in intensity from daily discomfort to acute, severe pain during a flare-up in which he would have to crawl to move about, with minimal response to painkillers. (Tr. 360, 363, 378.) During the course of his treatment, Dr. Davis referred plaintiff to a neurologist and prescribed various pain killers and muscle relaxants, including Flexeril, Vicodin, and Naproxen. (Tr. 200, 360, 363, 371, 409.) Dr. Davis requested an MRI of plaintiff's back on March 1, 2007, which revealed grade 1 anterolisthesis and spondylolysis of plaintiff's L5 vertebra, as well as small diffuse bulges in several of his other intervertebral discs and mild compression of the L3 and L4 nerve roots. (Tr. 357-58.) On December 13, 2007,

Dr. Davis noted that plaintiff can stand for no more than an hour at a time and "can do no lifting."  (Tr. 378.)

Dr. Davis completed a Physical Capacities Evaluation of plaintiff on April 17, 2007, indicating that he could not sit, stand, or walk for more than an hour in an entire eight-hour workday, could never lift or carry any weight at all, was unable to use his hands for grasping, use of arm controls, or fine manipulation, and could not bend, squat, crawl, climb, or reach. (Tr. 365.)  A subsequent evaluation on August 7, 2008, amended those restrictions slightly, recommending that plaintiff could not sit, stand, or walk for more than an hour per day, could lift up to five pounds frequently and carry up to ten pounds occasionally, could not use arm controls, and was totally restricted from activities involving unprotected heights, moving machinery, and driving automobile equipment.  (Tr. 384.)

Dr. Davis referred plaintiff to Dr. Matthew Philips, a neurologist, in January 2008.  (Tr. 360.)  Dr. Philips noted that plaintiff had decreased range of motion in his back, but normal gait and motor functions.  (Tr. 381.)  His impression was that Moniz had "mechanical back pain due to his degenerative lumbar disc disease as well as his spondylolisthesis."  He reviewed

plaintiff's MRI and recommended a comprehensive course of non-operative therapy with a physiatrist -- a rehabilitation physician.[1]  (Tr. 381.)

Dr. Maria Gorbovitsky, a non-examining physician, completed a Residual Functional Capacity Assessment of plaintiff on December 5, 2006.  (Tr. 257-64.)  She concluded that he was able to lift or carry up to twenty pounds occasionally and ten pounds frequently, that he could operate hand controls continuously, and that he could sit, stand, or walk about six hours in an eight-hour workday, but that he must be permitted to change his position periodically to relieve his back pain.  (Tr. 258.)  She also found occasional postural limitations to plaintiff's ability to climb, crawl, balance, or crouch.  (Tr. 259.)

On August 23, 2007, Dr. Peter Horan examined plaintiff to determine his eligibility for disability benefits.  (Tr. 369-70.) Dr. Horan's examination indicated that plaintiff "has extreme difficulty in [back] flexion without pain," noting that he could achieve "about 10 degrees flexion" and walked with a limp on the left side.  (Tr. 370.)  He also determined that plaintiff's grasp and grip were good, and that he had no motor or sensory

---

[1] Plaintiff testified that, at Dr. Philips' recommendation, he saw a Dr. Anonte for pool therapy, which was somewhat helpful in addressing his back pain.  (Tr. 30.)  There is no documentation of that treatment in the record.  (Tr. 29.)

deficiencies.  (Id.)  His assessment concluded that plaintiff had "[s]ignificant severe chronic low back syndrome."  (Id.)

### 2.  **Mental Ailments**

Plaintiff has a history of depression and anxiety, stemming substantially from the debilitation caused by his back pain. (Tr. 152.)  His primary care physicians, Drs. Treadup and Davis, treated him for these conditions.  Dr. Treadup prescribed Lorazepam for his anxiety beginning on February 25, 2002, and gave him samples of Lexapro.  (Tr. 305, 325.)  Dr. Davis continued prescribing Lorazepam after February 2007.  (Tr. 363.)

Plaintiff sought counseling from Ms. Elizabeth Robert, a Licensed Independent Clinical Social Worker ("LICSW"), who treated him from March 20, 2006, through May 24, 2006.  (Tr. 219.)  In a Psychiatric Disorder Form dated October 12, 2006, Ms. Robert indicated that plaintiff had a generalized anxiety disorder and that, while he was alert and oriented, he was impulsive, angry, tended to isolate himself, and was aggravated and decompensated easily when with others.  (Tr. 219-20.)  She noted also that plaintiff was not taking any medication and had, to her knowledge, not undergone any psychological testing.  (Tr. 220-21.)  According to Ms. Robert, plaintiff's prognosis was guarded without medication and treatment, but he discontinued their sessions because of his high insurance deductible and his unwillingness to work on a payment plan.  (Tr. 221.)

On April 17, 2008, plaintiff began treatment with Caryn
Julien, LICSW, and Dr. Douglas H. Griffiths, a psychiatrist.
(Tr. 385-404.)  Ms. Julien noted plaintiff's history of self-
medication with alcohol and his depressed and irritable mood, but
indicated that he denied any suicidal ideation.  (Tr. 385-86.)
Her records indicate a primary diagnosis of dysthymic disorder,
with a secondary diagnosis of social phobia.  (Tr. 389).  She saw
plaintiff regularly through June 26, 2008, and her notes indicate
mild improvement in his condition from week to week.  (Tr. 391-
97.)  Dr. Griffiths prescribed Wellbutrin for plaintiff's
depression, but appears to have seen him only once, for a
psychiatric evaluation on July 21, 2008, and his notes of that
examination are illegible.  (Tr. 200, 388.)

Both Dr. Griffiths and Ms. Julien completed questionnaires
regarding plaintiff's residual functional capacity in August
2008.  (Tr. 401-04.)  Their nearly identical assessments indicate
moderately severe impairment of plaintiff's ability to relate to
others, carry out daily activities, and respond appropriately to
peers and workplace supervision.  (Tr. 401, 403.)  They also note
moderate to moderately severe limitations of his ability to
perform complex, repetitive, and varied tasks.  (Tr. 402, 404.)

On January 5, 2007, Dr. Steven J. Hirsch, a psychologist
working for Massachusetts Disability Determination Services,
conducted a psychodiagnostic interview to evaluate plaintiff's

-9-

eligibility for disability benefits.  (Tr. 265-68.)  Dr. Hirsch
reported that plaintiff was alert and oriented, with clear speech
and functional memory and expressive vocabulary skills.  (Tr.
266.)  He described plaintiff as "sad" but "not anxious," noting
that he exhibited anhedonia -- inability to experience positive
emotions -- tended to isolate himself, and had difficulty coping
with daily stressors, though his social judgment and reasoning
skills were functional.  (Tr. 267.)  Dr. Hirsch diagnosed
Dysthymic Disorder and Anxiety Disorder and expressed concern
about plaintiff's alcohol use.  (Tr. 267-68.)

     Joan Kellerman, Ph.D., reviewed plaintiff's medical records
in connection with his application for disability benefits on
January 18, 2007.  (Tr. 269-82.)  She identified his affective
ailment as a dysthymic disorder characterized by anxiety, and
made note of his daily alcohol use, but characterized those
conditions as non-severe.  (Tr. 270, 273, 275, 278, 282.)  Dr.
Kellerman determined that his condition caused no limitation on
plaintiff's daily activities and only mild limitations on social
functioning and maintaining concentration, persistence, or pace.
(Tr. 280.)  Her report contains only a few sentences of
explanation, in which she noted that plaintiff "does not report
any severe [symptoms] or functional intrusion due to his
psychological condition" and concluded that Ms. Robert's notes
were inconsistent both with Dr. Hirsch's report and with

plaintiff's allegations, noting also that Ms. Robert seemed unaware of his alcohol use.  (Tr. 282.)

Mark Sokol, Ed.D., examined plaintiff on September 4, 2007, to determine his eligibility for disability benefits.  (Tr. 366-68.)  Dr. Sokol found plaintiff to be anxious, depressed, and experiencing recurrent suicidal ideation without serious plan or intent.  (Tr. 366-67.)  He was alert and oriented, his memory skills were intact, and his speech and thought processes were intelligible.  (Id.)  Dr. Sokol diagnosed a "[m]ajor recurrent depressive disorder without psychotic features, recurrent, moderate[,]" and a generalized anxiety disorder.  (Tr. 368.)  As to vocational limitations, Dr. Sokol found that plaintiff could follow simple instructions, but that he was moderately impaired in his ability to maintain attention, perform tasks consistently and at a reasonable pace, and cope with others.  (Id.)

B.    **Procedural History**

Plaintiff filed an application for Social Security Disability Insurance benefits on August 10, 2006, alleging disability due to an L-5 spinal defect, degeneration of the lumbar disc, anxiety, and depression.  (Tr. 133-135, 152.)  The Social Security Administration denied his application at the initial review level on January 24, 2007.  (Tr. 68-70.)  Plaintiff filed a timely request for reconsideration, and the Federal Reviewing Official affirmed denial of the claim.  (Tr.

56-59, 72-73.)  Plaintiff requested a hearing before an
Administrative Law Judge ("ALJ") on November 30, 2007.  (Tr. 80.)

A hearing was held before ALJ Martha Bower on August 26,
2008, who heard testimony from plaintiff, Dr. Stephen Kaplan, an
independent medical expert, and Mr. Michael Laraia, a vocational
expert.  (Tr. 21.)  Plaintiff was represented by counsel at the
hearing.  (Id.)  Plaintiff testified that he is unable to sleep
well at night and that his medications make him drowsy during the
day, which interferes with his ability to drive.  (Tr. 27, 46.)
He spends most of his day in a recliner and experiences constant
pain that becomes paralyzing intermittently.  (Tr. 30-31, 46-47.)
He testified that he can sit or stand for an hour at a time and
he experiences muscle spasms in his back if he sits or stands for
too long.  (Tr. 35, 40-41.)  He is only able to lift five pounds.
(Tr. 41.)  At the time of the hearing, plaintiff testified that
he was taking Flexeril, Lorazepam/Ativan, and Welbutrin.  (Tr.
27, 31, 32.)  Essentially none of the testimony addressed his
depression or anxiety.

Dr. Kaplan testified that he could not identify any specific
medical disease recorded by plaintiff's physicians over the
period from 1996 to 2007, and concluded that the determination of
the non-examining physician, Dr. Gorbovitsky, that plaintiff was
capable of light exertional level work with postural limitations
was reasonable.  (Tr. 39-40.)  Mr. Laraia testified that a person

of plaintiff's age, education, experience, and medical
limitations would be unable to continue his past work, but that a
number of other suitable jobs existed in the regional economy.
(Tr. 43-45.)  In response to the ALJ's questioning, Mr. Laraia
testified that taking into account "a moderate limitation in
social interactions requiring an object oriented task with only
occasional work related interactions with [others]" would
diminish the number of jobs by at least seventy-five percent.
(Tr. 47.)  Mr. Laraia also stated that all jobs would be
precluded if an individual needed to lie down for an hour a day
and that need could not be accommodated by normal work breaks or
if an individual had moderately severe limitation in the ability
to sustain concentration, persistence, and pace.  (Tr. 47-48.)

     In an opinion dated September 2, 2008, the ALJ concluded
that only plaintiff's degenerative disc disease constitutes a
severe impairment and accepted the residual functional capacity
suggested by Dr. Gorbovitsky and adopted as reasonable by Dr.
Kaplan, disregarding Dr. Davis's more restrictive assessment.
(Tr. 15-18.)  She found that, while he is unable to perform his
past work, his impairment does not prevent him from performing
other available work.  (Tr. 18-19.)  Based on those conclusions,
the ALJ determined that plaintiff was not disabled and denied his
claim for disability benefits.  (Tr. 20.)  Plaintiff appealed to
the Decision Review Board, which affirmed the ALJ's decision on

December 3, 2008.  (Tr. 1-5.)  Having exhausted his
administrative remedies, plaintiff filed the present lawsuit.

### III.   LEGAL STANDARD

### A.   Disability Determination Process

An individual may be entitled to Social Security disability
benefits if he is unable to "engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).
An impairment can be disabling only if it "results from
anatomical, physiological, or psychological abnormalities which
are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Commissioner has developed a five-step evaluation
process to determine whether a person is disabled.  20 C.F.R. §
404.1520(a)(4) (2009); Goodermote v. Sec'y of Health & Human
Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).  "Step one determines
whether the plaintiff is engaged in 'substantial gainful
activity.'  If he is, disability benefits are denied.  If not,
the decisionmaker proceeds to step two, which determines whether
the claimant has a medically severe impairment or combination of
impairments."  Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987)
(internal citations omitted).  To establish a severe impairment,

-14-

the claimant must "show that he has an 'impairment or combination of impairments which significantly limits . . . the abilities and aptitudes necessary to do most jobs.'" Id. at 146 (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)).

If the claimant has a severe impairment, the third step is to determine "whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." Bowen, 482 U.S. at 141 (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). If so, the claimant is presumed conclusively to be disabled. Id. If not, the fourth step evaluates whether the impairment prevents the claimant from performing his past work. Id.; 20 C.F.R. § 404.1520(a)(4)(iv).

If he cannot perform his past work, the burden shifts to the Commissioner on the fifth step to prove that the claimant "is able to perform other work in the national economy in view of his age, education, and work experience." Id. at 142, 146 n.5. During steps one, two, and four, the burden of proof is on the claimant. Id. at 146 n.5. At the fifth step, the burden is on the Commissioner. Id. at 142. If the Commissioner fails to meet this burden, the claimant is entitled to benefits. Id.

When determining disability, the ALJ may give controlling weight to the opinion of the claimant's treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in [the] case record." 20 C.F.R. §§
404.1527(d)(2). However, the ALJ can reject a treating
physician's opinion when "contradictory medical advisor evidence
appears in the record." Keating v. Sec'y of Health & Human
Servs., 848 F.2d 271, 276 (1st Cir. 1988) (citing Sitar v.
Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)).

**B.   Standard of Review**

This Court does not review the Commissioner's disability and
disability insurance decisions de novo. Lizotte v. Sec'y of
Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).
Rather, it "must affirm the [ALJ's] findings if they are
supported by substantial evidence." Cashman v. Shalala, 817 F.
Supp. 217, 220 (D. Mass. 1993); see also Rodriguez Pagan v. Sec'y
of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (stating
that the ALJ's determination must be affirmed, "even if the
record arguably could justify a different conclusion, so long as
it is supported by substantial evidence").

Substantial evidence is "more than a mere scintilla."
Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol.
Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial
evidence means such relevant evidence as a "reasonable mind,
reviewing the evidence in the record as a whole, could accept . .
. as adequate to support [the ALJ's] conclusion." Irlanda Ortiz
v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir.
1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647

-16-

F.2d 218, 222 (1st Cir. 1981)).  In reviewing the record for substantial evidence, the Court is "to keep in mind that '[i]ssues of credibility and the drawing of permissible inferences from evidentiary facts are the prime responsibility of the [ALJ].'"  Rodriquez, 647 F.2d at 222 (quoting Rodriquez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)).  When a conflict exists in the record, the ALJ weighs the evidence and resolve material conflicts in testimony.  See Richardson, 402 U.S. at 399; Irlanda Ortiz, 955 F.2d at 769.  An ALJ's findings of fact, however, are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

In addition to considering whether the ALJ's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied.  "Failure of the [ALJ] to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with the sufficient basis to determine that the [ALJ] applied the correct legal standards are grounds for reversal."  Weiler v. Shalala, 922 F. Supp. 689, 694 (D. Mass. 1996) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982)).

### IV.  DISCUSSION

Plaintiff argues that the ALJ's findings are not supported by substantial evidence with regard to (1) his evaluation of residual functional capacity; and (2) his determination that

-17-

plaintiff's mental impairment is not severe.

A.   **Physical Impairments**

    1.   **Treating Physicians**

    Plaintiff argues that the ALJ failed to accord proper weight to his treating physicians' opinions.  The ALJ found that plaintiff suffered from a severe impairment of degenerative disc disease but concluded that he retained the residual functional capacity to perform a range of light work.  Specifically, he claims that the ALJ improperly discredited the opinions of Drs. Treadup, Davis, Adelberg, and Philips in favor of Dr. Kaplan, who never examined him.

    The ALJ generally must give controlling weight to a treating physician's opinion, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of the patient's medical condition.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  However, the ALJ is "not obligated automatically to accept [their] conclusions." Guyton v. Apfel, 20 F. Supp. 2d 156, 167 (D. Mass. 1998). Controlling weight is given only if the "treating source's opinion on the . . . nature and severity of [the patient's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The ultimate determination of disability is left

to the ALJ.   See 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

If the ALJ does not give a treating physician's report controlling weight, she must consider six factors to determine what weight to give it:

> 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the relevant evidence in support of the medical opinion; 4) the consistency of the medical opinions reflected in the record as a whole; 5) whether the medical provider is a specialist in the area in which he renders his opinions; and 6) other factors which tend to support or contradict the opinion.

Guyton, 20 F. Supp. 2d at 167 (citing 20 C.F.R. § 404.1527(d)(2)-(6)).   The regulations do "not mandate assignment of some unvarying weight to every report in every case."   Id. (citation omitted).   However, an ALJ must give "good reasons" for the weight given a physician's opinions.   20 C.F.R. § 416.927(d)(2).

Plaintiff's arguments that the ALJ disregarded the opinions of Drs. Treadup, Adelberg, and Philips in favor of Dr. Kaplan are unfounded.   First, none of those treating physicians offered any opinion as to plaintiff's residual functional capacity.[2] Furthermore, the ALJ based her residual capacity assessment substantially on the findings of Drs. Adelberg and Philips, as well as the agency physician, Dr. Horan, and plaintiff has not

---

[2] Dr. Treadup's records contain questionnaires from September 28, 2006, assessing plaintiff's disc disease and pain. (Tr. 341-42.)   However, those forms are blank, stating only "see attached records."   (Id.)   Her records devote minimal space to describing the nature or severity of plaintiff's condition, and none to assessing his resulting physical limitations.

explained how their opinions are at odds with Dr. Kaplan's.  The specialists' examinations revealed that, while he suffered decreased range of motion, pain, and tenderness due to mechanical back pain, he was neurovascularly intact with normal gait and motor strength.  While Dr. Adelberg noted that plaintiff was "absolutely miserable," both he and Dr. Philips saw plaintiff only once and recommended conservative, non-surgical treatments. Dr. Philips also evaluated plaintiff's MRI, which indicates only mild compression of the nerves in his back.

Furthermore, the ALJ noted that plaintiff's chiropractor, Dr. Swift, twice returned him to work without restrictions in 2004, <u>after</u> his alleged onset of disability.  In 2006, Dr. Swift, who treated plaintiff for years, listed his only limitation as an inability to bend repetitively at the waist.  The only physician to offer a contrary opinion was Dr. Davis, whose April 2007 and August 2008 evaluations indicated a far more severe restriction. The ALJ discredited this opinion, noting its inconsistency with the other evidence in the record.  While the ALJ did not engage in a methodical consideration of the factors listed in 20 C.F.R. § 404.1527(d), substantial evidence supports her assessment of Dr. Davis' opinion, and plaintiff has offered nothing to resuscitate it.

### 2.   <u>Subjective Complaints of Pain</u>

Plaintiff refers to his documented history of back pain associated with his lumbar condition, arguing that the ALJ failed

to give proper consideration of his subjective complaints.  To
establish a claim of disability due to pain or other subjective
symptoms, a plaintiff must first show that he has a "clinically
determinable medical impairment that can reasonably be expected
to produce the pain alleged."  Avery v. Sec'y of Health & Human
Servs., 797 F.2d 19, 21 (1st Cir. 1986).  If so, the ALJ must
then consider the intensity and persistence of the plaintiff's
symptoms as well as the functional impact those symptoms may have
on his ability to work.  20 C.F.R. §§ 404.1529(c)(1),
416.929(c)(1); Makuch v. Halter, 170 F. Supp. 2d 117, 126 (D.
Mass. 2001).  In making this determination, the ALJ must consider
all available objective medical evidence.  20 C.F.R. §§
404.1529(c)(1), 416.929(c)(1).  However, a plaintiff's statements
regarding the intensity and persistence of his pain and its
impact on his ability to work will not be rejected solely because
they are not substantiated by the available objective medical
evidence.  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

     The regulations recognize that a person's symptoms may be
more severe than the objective medical evidence suggests.  See 20
C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Therefore, several
factors (known as the Avery factors) should be considered when an
applicant alleges pain: (1) the claimant's daily activities; (2)
the location, duration, frequency, and intensity of the pain; (3)
precipitating and aggravating factors; (4) the type, dosage,
effectiveness, and side effects of any medication taken to

alleviate the pain or other symptoms; (5) treatment, other than
medications, received to relieve pain or other symptoms; (6)
measures used by claimant to relieve pain or other symptoms; and
(7) any other factors relating to claimant's functional
limitations and restrictions due to pain.  Avery, 797 F.2d at 28-
29; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

     To complete the analysis, the ALJ often must assess the
credibility of a plaintiff's statements about the intensity of
her pain and other symptoms, as well as their effect on his
functional abilities.  SSR 96-7p, Evaluation of Symptoms in
Disability Claims, Assessing the Credibility of an Individual's
Statements, 61 Fed. Reg. 34,483, 34,484 (July 2, 1996).  Although
the ALJ's credibility determination generally is entitled to
deference, "an ALJ who does not believe a claimant's testimony
regarding his pain, 'must make specific findings as to the
relevant evidence he considered in determining to disbelieve the
[claimant].'"  Makuch, 170 F. Supp. 2d at 126 (quoting Da Rosa v.
Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)
(alterations in original)).

     Here, there is no dispute that plaintiff has a severe
impairment that can reasonably be expected to produce the pain
alleged, yet the ALJ failed to address these Avery factors in
explaining her decision to discredit plaintiff's claims as to the
intensity of his pain.  She did not discuss the impact of the
pain on his daily activities, the effect of his medications, or

-22-

the efficacy of other treatments.  In explaining her reasoning, the ALJ discussed only the medical opinions offered by two of plaintiff's doctors, Treadup and Swift.  Because Dr. Swift stated he could return to work in 2004 and Dr. Treadup had only a few references to body pain, she found Moniz's "longstanding complaint and the alleged severity" of his limitations not credible.  (Tr. 16-17.)  However, virtually every doctor (e.g., Swift, Adelberg, Davis, Philips) who treated plaintiff noted his serious chronic back pain which intermittently flared up and caused such intense pain that he had to crawl.  Between 2002 and 2007 he was prescribed Percocet, Motrin, Flexeril, Naproxen and Vicodin.  Dr. Adelberg, an orthopedist, reported a man who was miserable.  Even the non-treating physician, Dr. Horan, and the independent expert, Dr. Kaplan, reported severe chronic back pain.  His social workers (Robert and Julien) all commented on his chronic pain.

The Avery factors, moreover, are based explicitly on the presumption that a claimant's symptoms may be more severe than the objective evidence suggests, and the regulations require the ALJ to consider them and not to reject a plaintiff's claims simply because of inconsistency with the objective medical evidence.  20 C.F.R. §§ 404.1529(c)(2)-(3).  The ALJ must actually consider the Avery factors in assessing plaintiff's claims of debilitating pain, and not simply recite his testimony before concluding that it is not credible.  SSR 96-7p, 61 Fed.

Reg. at 34,484.  In light of his consistent medical history, the ALJ's discussion of plaintiff's complaints of pain was woefully inadequate.  While it may well be that the chronic back pain in 2003 and 2004 was not disabling, it intensified and became more consistent, and warrants proper consideration.

### 3.  **Vocational Evidence**

Plaintiff suggests that the ALJ's step-five determination is not supported by substantial evidence, pointing to the vocational expert's statement that plaintiff could engage in no available work if he had to rest one hour during the work day and the rest could not be accommodated by an employer.  The First Circuit has held that a vocational expert's answers are relevant only if the limitations considered by him are based on medical evidence in the record.  Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).  Here, plaintiff has offered no evidence in the record, and the Court can find none, suggesting that plaintiff requires a one hour rest during the workday.  To the contrary, plaintiff's own testimony was that he must shift his position periodically to relieve pressure on his back. Therefore, the question posed to the vocational expert was irrelevant and the ALJ's failure to adopt it not erroneous.

### B.  **Mental Impairments**

Plaintiff contends that the ALJ erred in concluding that his mental ailments were not severe at step two by giving improper

weight to his treating physicians' opinions and relying arbitrarily on the assessment of Dr. Kellerman, a non-examining consultant.  In considering whether an impairment is "severe," an ALJ must rate the degree of functional limitation presented by that condition in four areas: (1) daily activities; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  The first three areas are rated on a scale from none, to mild, moderate, marked, moderately severe, and extreme, while episodes of decompensation are rated zero, one or two, three, or four or more.  Id. § 404.1520a(c)(4).  An impairment generally is not severe if the ALJ rates the first three areas as mild or lower. Id. § 404.1520a(d)(1).  The burden of proving a severe impairment rests with the claimant.  Bowen, 482 U.S. at 146.

Here, the ALJ found that plaintiff's anxiety and depression were not severe, as he suffered no limitation in his activities of daily living, mild limitation in social functioning and concentration, persistence, or pace, and no episodes of decompensation.  She agreed with Dr. Kellerman, a non-examining consultant, in this assessment, and dismissed the contrary findings of Dr. Griffiths, Dr. Sokol, and Ms. Julien.[3]  She

---

[3] Plaintiff points also to the records of his treatment for anxiety by Dr. Treadup, his primary care physician, who prescribed Lorazepam.  He cannot satisfy his burden of showing a severe impairment, however, merely by demonstrating the diagnosis of his condition and a lengthy treatment history, and Dr. Treadup offered no assessment of the functional impact of his condition.

stated that the basis for Dr. Griffiths's opinion was unclear, as "there is no evaluation in the record, with a detailed mental status examination, by Dr. Griffiths." (Tr. 17.) Dr. Griffiths's notes were not legible, and he did not do a psychological evaluation. She noted that Ms. Julien's records were minimally descriptive, suggesting improvement and only mild impairment. Ms. Julien also stated that Ativan and Prozac "helped somewhat." (Tr. 400.) The ALJ gave Dr. Sokol's evaluation little weight because it included tests of concentration on which plaintiff performed well and supported a finding of "at most, mild limitations." (Tr. 18.) The ALJ did not address the opinion of Ms. Robert, a social worker, whose diagnosis was generalized anxiety disorder.

While her reasoning was terse, the ALJ gave good reasons for the weight assigned to the treating source's opinions. 20 C.F.R. § 404.1527(d)(2)-(6). Dr. Griffiths only saw Moniz once, and he gave no evaluation. Ms. Julien, who was a social worker, only saw him for two months and found him improving. While Dr. Kellerman, upon whose report the ALJ relied exclusively, did not examine plaintiff, Dr. Hirsch, a psychologist, did conduct an interview and a detailed evaluation upon which she relied.

---

Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [an ailment], of course, says nothing about the severity of the condition.").

In light of Dr. Griffiths's brief therapeutic relationship with the plaintiff, and the fact that Julien and Roberts are social workers, not medical professionals, the ALJ did not err when she relied on a non-examining expert's report alone.  <u>See Berrios Lopez v. Sec'y of Health & Human Servs.</u>, 951 F.2d 427, 431 (1st Cir. 1991).

### ORDER

Defendant's Motion for an Order Affirming the Decision of the Commissioner [Docket No. 17] is **DENIED.**  Plaintiff's Motion to Remand the Case to the Social Security Administration [Docket No. 1] is **ALLOWED**.

                         /s/ PATTI B. SARIS
                         PATTI B. SARIS
                         United States District Judge